Ex parte David Stewart DABAU.

No. 07–87–0139–CV.

Court of Appeals of Texas,
Amarillo.

June 23, 1987.

Bob Blinderman, Amarillo, for relator.

Catherine E. Brown Dodson, Amarillo, for respondent.

Before DODSON, COUNTISS and BOYD, JJ.

PER CURIAM.

In this original proceeding for habeas corpus relief, relator David Stewart Dabau, confined pursuant to a contempt order for failure to pay previously-decreed child support, contends that he is being illegally restrained of his liberty because he did not receive due process of law at the contempt hearing, and because he was unable, without fault, to pay the ordered child support. The petition for writ of habeas corpus will be denied.

The trial court entered its decree on 29 July 1981, dissolving the marriage of relator and Beverly Dabau Dean ("Beverly"). By the terms of the decree, Beverly was designated managing conservator of the minor child of the marriage and was to receive child support in the amount of $160 per month until the child reaches the age of 18 years or is earlier emancipated. On 31 March 1987, Beverly filed a consolidated motion for contempt, for arrearage judgment and for withholding from earnings, alleging that relator had accrued an arrearage in child support of $11,200. Relator was served with notice on 28 April 1987, and a hearing was had on 14 May 1987.

Immediately before the hearing commenced, relator filed a motion for continuance on the basis that he had not been accorded the notice required by Texas Family Code Annotated § 14.31(c) (Vernon Supp.1987). Relator urged in this connection that he needed additional time to procure a copy of tax returns and income records. Responsively, Beverly waived those parts of her motion by which she sought an arrearage judgment and withholding of earnings, and elected to seek only an adjudication of relator's contempt for his disobedience of the support order.

Beverly's counsel represented that Beverly was temporarily residing in Idaho, was to appear at a scheduled hearing in Amarillo the next day on her motion for contempt against another ex-husband whom she alleged had not paid child support as ordered, and would have to make other trips between Idaho and Amarillo in connection with her pending bankruptcy petition. Resultantly, according to Beverly's counsel, a continuance of the hearing would work a hardship on her. The court denied relator's motion for continuance.

At the hearing an arrearage amount of $9760 was stipulated to by the parties. Beverly testified that she had not received a child support payment since March 1982, when relator informed her that he could make no further payments for three or four years because he was going to school. Beverly, having lost track of relator's whereabouts, had no further contact with him until having a telephone conversation with him three or four weeks before the hearing. In that conversation, relator explained that he had been injured skiing, had no medical insurance, and faced substantial medical bills and possible bankruptcy. She testified that from her marriage experience, she was familiar with the financial status of relator's family and believed that means were available to discharge the arrearage.

Relator testified that his gross monthly income from his current job as a courier is $600. He testified that he is paid for 35 hours of work, but spends 50 to 60 hours per week at the workplace to learn more about the company's operations. He expressed a willingness to dedicate the non-compensated hours he spent on the job instead to a remunerative position, but explained that he had been unable to find a second job owing to the fact that his courier duties were undertaken at two separate times of the day, i.e., the morning and evening hours. He testified that he had been unsuccessful in his efforts to borrow

the money to pay the arrearage from financial institutions and from family and friends. Relator estimated his outstanding indebtedness as being between $24,000 and $25,000, though his testimonial enumeration of his debts accounted for a total indebtedness of $17,815.75 for, cumulatively, medical bills, an automobile loan, credit on automobile repairs, and credit cards. He testified that his mother has helped him financially, she having paid $4389 toward his bills since January 1986, and furnishes him a place to live when necessary.

Relator chronicled in his testimony his employment history from the time of the divorce. In the period August 1982 to April 1984, relator was earning a salary ranging from $6 to $7 per hour, and the monthly surplus of income over expenses during that period was $200. He testified that his taxable income for the years 1984 and 1985 were $7500 and $8800, respectively. Relator declined to characterize child support as a living expense.

The trial court's judgment reflects its findings that relator had accrued a child support arrearage of $9760, that he was able to pay monthly child support as the payments fell due between April 1982 and April 1984, and that he is presently able to pay the arrearage due. The court accordingly adjudged relator in contempt, assessed his punishment therefor at six months confinement in the Potter County Jail, and ordered his continued confinement thereafter until he has paid the $9760 support arrearage, $56.04 court costs, and $300 attorney's fee.

Relator's contention that he did not receive due process of law is premised fundamentally upon three perceived procedural failings. First, he argues that section 14.-31(c) of the Texas Family Code mandated that the hearing be held no sooner than the Monday next after the expiration of 20 days from 28 April 1987, the date he was served with process. Second, he urges that the service of process itself was defective since the instrument used was not a citation, and shows an impossible date of service on relator, *i.e.,* 28 April 199 7. Last, he complains, cryptically, that the trial

court improperly placed the burden of proof at the hearing. We will address these arguments in turn.

Section 14.31(c) of the Family Code provides as follows:

*Duty of Court on Filing of Motion.* On the filing of a motion under this subchapter, the court shall endorse thereon the time, place, and date of the hearing at which the respondent shall appear and respond to the motion. The hearing shall be held no sooner than 10 a.m. of the Monday next after the expiration of 20 days from the date of service, *except that if enforcement by contempt under Section 14.40 of this code is the only remedy sought by the movant, the court may direct the respondent to appear on a date not sooner than 10 days from the date of service to show cause why he should not be adjudged in contempt.* [emphasis added]

■ Though Beverly initially invoked child support collection remedies prescribed in the Family Code in addition to the contempt remedy, she waived these other remedies at the commencement of the contempt hearing. It follows that the applicable statutorily required time lapse between service of process and the hearing in this case was a minimum of 10 days, a directive obviously complied with.

■ We are not persuaded that the circumstance that Beverly originally invoked a broader panoply of collection remedies alters this conclusion. Relator appeared with his attorney and participated fully in the hearing. He furnished an extensive explication of his employment history and of the debts competing with his child support obligation. Even were we to subscribe to relator's characterization of the proceeding as one requiring over 20 days' notice, the departure from the statutory notice requirement would have been a procedural irregularity only. *Ex parte Boyle,* 545 S.W.2d 25, 27 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). In view of the uncontroverted expression of the inconvenience and expense to Beverly which would result from a postponement of the hearing, we cannot fault the trial judge for denying

a continuance. *See Ex parte Cox,* 479 S.W.2d 110, 114 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). In this connection, the able presentation of relator's defense belies his complaint that the denial of his motion for continuance amounted to a deprivation of due process.

■ Relator's complaint that service of process was defective because the medium for service was not an instrument labeled a citation flows from his erroneous perception that the same procedural directives obtained here as in civil causes of action generally. However, since the subject of the proceeding was limited to the motion for contempt, the sufficiency of notice is measured by the requirement of section 14.31(d) of the Texas Family Code Annotated (Vernon Supp.1987), which provides, as germane here, that:

A respondent or alleged contemnor is entitled to 10 days' notice of a proceeding under Rule 308–A of the Texas Rules of Civil Procedure or of a proceeding under this subchapter in which enforcement of child support by contempt, income withholding, or both are the only remedies sought.

Rule 308–A of the Texas Rules of Civil Procedure, which is addressed to a trial court's enforcement of its child support decrees, provides, in relevant part, that:

Upon filing of such statement, or upon his own motion, the court may issue a show cause order to the person alleged to have disobeyed such support order, commanding him to appear and show cause why he should not be held in contempt of court. Notice of such order shall be served on the respondent in such proceedings in the manner provided in Rule 21a, not less than ten days prior to the hearing on such order to show cause.

By Texas Rule of Civil Procedure 21a, the notice may be served by delivery of a copy of the notice or document, by mail, or in such manner as the court may direct.

In this case, the district clerk issued a precept to serve, directed to the sheriff or any constable of Bernalillo County, New Mexico, which comports with virtually all requisites for citations specified in Rule 101 of the Texas Rules of Civil Procedure. *A fortiori,* the instrument by which relator was given notice met the less exacting procedural requirement of section 14.31(d) of the Family Code.

■ Neither does the obvious clerical error in the officer's recital of the date in which relator was served with process, *i.e.,* 28 April 199 7, afford a basis for relief, since the failure of the serving officer to properly note the time of service is not a jurisdictional defect. *A.J. Hill Co. v. Tex-Tan of Yoakum,* 235 S.W.2d 945, 947 (Tex. Civ.App.—Galveston 1951, writ dism'd). In any event, relator's voluntary appearance at the contempt hearing purged any procedural irregularity in the service of process. *See Ex parte Cummings,* 610 S.W.2d 238, 242 (Tex.Civ.App.—Amarillo 1980, no writ).

■ We understand relator's final complaint respecting the claimed denial to him of due process to be that the trial court should have imposed the burden on Beverly to prove his ability to pay the arrearage, as was dictated by the holding of *Ex parte Lopez,* 710 S.W.2d 948 (Tex.App.—San Antonio 1986, no writ), rather than requiring him to defensively prove his inability to pay. In advancing the argument, he tacitly acknowledges that this Court has declined to follow the holding of the San Antonio court in *Lopez* that an element of proof borne by the obligee parent in contempt proceedings is the obligor's ability to pay.

For the reasons expressed in *Ex parte Wilbanks,* 722 S.W.2d 221, 226 (Tex.App.—Amarillo 1986, no writ), we will persist in our declination to follow the *Lopez* holding. Significantly, the San Antonio court has overruled *Lopez'* placement of the burden of proof of ability to pay, determining in harmony with our holding in *Ex parte Wilbanks,* that the burden is upon the obligor to prove inability to pay. *See Ex parte McIntyre,* 730 S.W.2d 411 (Tex.App.—San Antonio 1987, no writ) (not yet reported). We conclude that no deprivation of due process has been shown.

Neither do we find record support for relator's second premise for habeas corpus

relief that he was and is unable, without fault, to obey the order of child support. The trial court's contempt judgment imposes two penalties on relator. A criminal punitive sanction of six months' confinement was imposed for his failure to make the ordered periodic support payments. He is then required to remain in jail after service of the six-month sentence until he has eliminated the contempt by paying the support arrearage and costs of the contempt hearing.

 Respecting the legality of his confinement for criminal contempt, relator's burden in this Court is to demonstrate that he established conclusively in the trial court, *i.e.*, as a matter of law, that it was impossible for him to obey the court order at the time performance was due. *Ex parte Raymer*, 644 S.W.2d 889, 890 (Tex. App.—Amarillo 1982, no writ). If relator fails to carry that burden as to even one delinquent payment, the criminal contempt judgment is not void. *Id.*

The trial court expressly found that relator could have discharged his monthly support obligations as they accrued between April 1982 and April 1984. Relator acknowledged in his testimony that he enjoyed a surplus of earnings over living expenses during this period and other periods of his support obligation. It cannot be said, then, that relator conclusively established his inability to make his monthly child support payments between April 1982 and April 1984.

The burden on relator to convince us that the civil contempt portion of the judgment, *i.e.*, that part requiring his continued confinement until he had discharged the arrearage, is equally onerous, but is concerned with a different time frame. He must conclusively establish that at the time of the hearing he did not have, and had no source from which he might be expected to obtain, the arrearage. *Ex parte Cummings, supra*, at 241.

Beverly testified to her belief, founded upon her marital association with relator's family, that relator had familial resources to discharge the arrearage. Though testifying that he had unsuccessfully sought loans, relator acknowledged that his mother had provided substantial support to him. That relator had chosen to pay other expenses, rather than the child support the court had ordered, is insufficient to establish as a matter of law that he was unable, due to no fault of his own, to pay the arrearage in child support. *Ex parte Woodruff*, 483 S.W.2d 951, 956 (Tex.Civ. App.—Texarkana 1972), *writ dism'd*, 487 S.W.2d 692 (Tex.1972). Upon this conflicting evidence, we are not persuaded that relator met his burden to conclusively establish his inability to pay the arrearage. *See Ex parte Papageorgiou*, 685 S.W.2d 776, 778–79 (Tex.App.—Houston [1st Dist.] 1985, no writ).

The petition for writ of habeas corpus is denied.